UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GABRIELLE LYONS, | § § | **JURY DEMANDED** |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 6:17-cv-00232 |
| | § § | |
| BAYLOR UNIVERSITY, | § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, GABRIELLE LYONS, and (hereinafter "Plaintiff" or "Lyons") and files this Original Complaint (hereinafter this "Action" or this "Complaint"), complaining about Baylor University (hereinafter "You," "Your," "Baylor" or "Defendant") in the above-referenced lawsuit (hereinafter this "Action") and pursuant to the Federal rules of Civil Procedure (hereinafter the "Rules"):

### THE PARTIES

1.     Plaintiff Gabrielle Lyons is the former investigator for the Title IX office at Baylor University. She is a resident and citizen of the United States.

2.     Defendant is an institution of higher education chartered and existing under the law of the State of Texas. During all material times, Baylor University received federal funding for its academic programs and activities.

## SERVICE

3.      Defendant may be served with process through its registered agent, C.T. Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever this Defendant and/or registered agent may be found.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. Various actions and/or inactions by Baylor employed law enforcement amount to action under the color of law and therefore jurisdiction and claim is asserted under this statute.

6.      Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

7. To the extent necessary, Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims for negligence and gross negligence.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

9. All conditions precedent to all relief being sought by Plaintiff in the above-referenced Action has been met, performed, occurred and/or been waived.

## BACKGROUND ON CAUSES OF ACTION AND CONTENTIONS

10. At all relevant times, Baylor University receiving federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 USC 1681(a) (hereinafter "Title IX").

11. This is a Title IX retaliation case brought pursuant to the implied private right of action principles announced by the Supreme Court in *Jackson v. Birmingham Board Of Education*, 544 U.S. 167, 176-78 (2005). Plaintiff's employment was constructively discharged because she opposed Baylor University's unlawful practices, which were in violation of Title VII; and Title IX of the Education Amendments of 1972, 20 USC, §1681(a), a statute designed to eliminate (with certain exceptions) discrimination on the basis of sex in any education program or activity receiving Federal financial assistance.

12. Baylor's deliberate opposition to following Title IX and intentional retaliation against Plaintiff and others working in the Title IX office for trying to get Baylor to comply with Title IX were designed to create and did create a tense, pervasive and hostile work environment

to frustrate Plaintiff in hopes that she would voluntarily resign. Baylor later used the same wrongful tactics against Plaintiff's immediate supervisor Patty Crawford.

13. Plaintiff filed an anonymous Title IX Complaint with the Office of Civil Rights of the Department of Education on or about April 27, 2016. Plaintiff filed same anonymously because she feared retaliation from Baylor. In addition, Plaintiff filed a charge of sex/gender discrimination and retaliation with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC") against Baylor University arising out of the same facts alleged in this petition. Plaintiff has received her right to sue letter, from the EEOC (Exhibit "A") and, accordingly, in addition to the Title IX claims, she is pursuing Title VII claims against Baylor for sex discrimination remedies.

## FACTS

14. Plaintiff received her Bachelors of Arts from the University of Illinois, Urbana-Champaign. After college Plaintiff obtained a Masters of Public Administration from DePaul University in Chicago. Plaintiff has always been interested in ensuring equal opportunity for all individuals in the workplace, social rights and social justice.

15. Plaintiff began her career in public sector working for EEOC and later for the U.S. Office of Personnel Management. Plaintiff was hired on or about April 1, 2015 by Baylor University as an investigator for Baylor's Title IX office.

16. Baylor tried to suppress the sexual harassment and assaults that were occurring against female students at Baylor in order to protect the "Baylor brand." Baylor's improper actions ultimately resulted in the resignations or firings of Chancellor Kenneth Starr, Senior Vice President and COO Reagan Ramsower, football head Coach Art Briles, Assistant Vice President

for Student Financial Aid Lyn Wheeler Kinyon, Athletics Administrator Tom Hill, Title IX coordinator Patricia Crawford, Athletic Director Ian McCaw, Reagan Ramsower, Baylor University Provost and Executive Vice President Edwin Trevathan, Executive Vice President and Provost L. Gregory Jones, among others.  Baylor did nothing to correct its illegal and wrongful practices while Plaintiff was employed by Baylor.

17. Baylor knew of the violent culture on its campus, but took calculated steps to hide the allegations and protect its brand, to the detriment of its female students and the Title IX employees who were supposed to investigate and protect students from assault and discrimination.

18. Former regent Neal "Buddy" Jones even went so far as to distribute an e-mail where he stated that the female Baylor students he suspected of drinking were "perverted little tarts," "very bad apples," "insidious and inbred," and the "vilest and most despicable of girls."

19. Baylor did not give the Title IX office, in which the Plaintiff worked, sufficient resources to do its work.  Patty Crawford, the Title IX, notified Baylor repeatedly that the office needed more investigators and more resources.  Plaintiff believes Baylor intentionally refused to provide the additional resources necessary as part of a plan to protect Baylor football players.  Baylor showed clear favoritism to Baylor football players and male athletes.  Baylor hindered Plaintiff's ability to do her job because Baylor wanted <u>to protect Baylor football players.</u>  Baylor repeatedly failed to give Plaintiff prompt access to athletes (both witnesses/alleged harassers).  When football athletes were involved, Title IX office had to go through Ian McCaw and/or others in athletic department.

20. When Baylor's Title IX office was investigating possible Title IX violations committed by other (non-athlete) students or members of Baylor University, the Title IX Office

did <u>not</u> have to go through any particular person in that department. The Title IX office could contact professors, students, witnesses <u>directly</u>. In essence, when it involved a Baylor football player, Baylor required the Title IX office to deal with a gatekeeper from the athletic department and/or Baylor's Board of Regents. The athletic department often impeded the Title IX office's ability to promptly interview witnesses or alleged harassers. This prevented prompt enforcement of Title IX because it gave witnesses and harassers time to collect their thoughts, compare stories, manufacture alibis or otherwise gain information about the nature of the investigation involving them.

21.     This definitely did not happen with female athletes or with other Baylor students who were not scholarship athletes. Clearly Baylor was treating male football athletes better than female students and the rest of student body.

22.     For example, Collin Shillinglaw in the Athletics department would not schedule meetings Plaintiff requested with the star football player who was a witness to an alleged assault of a female. Shillinglaw gave Plaintiff a bad cell number for the star Baylor football player. Plaintiff repeatedly requested a good phone number and, incredulously, Shillinglaw claimed he did have the phone number of the star football player.

23.     This sexist mind-set pervaded the culture at Baylor and caused discrimination and encouraged mistreatment of female Baylor students, especially those who had the courage to step forward and report rapes and assaults. This sexist attitude also negatively affected the Title IX female staff (including Plaintiff) who investigated the allegations.

24.     Plaintiff had never encountered the level of discrimination against women that she saw while working in the Title IX office of Baylor University.

25. Baylor engaged in a pattern and practice that was intentionally discriminatory towards a class, female students <u>and</u> the Title IX female staff, including Plaintiff. Plaintiff protested to Baylor's administration that Baylor's unlawful employment practices and Baylor's resistance to complying with its Title IX obligations. When Plaintiff spoke out, reported and complained about this discrimination, she engaged in protected activity under Title VII and Title IX. Plaintiff reported Baylor's illegal practices to her superiors and then was subjected to intimidation and retaliation.

26. During Plaintiff's employment at Baylor, Plaintiff was subjected to a hostile and retaliatory work environment. The working conditions were so adverse and pervasive that a reasonable person would not continue to subject themselves to the situation. Indeed, other employees in Baylor's Title IX office felt compelled and forced to resign and did resign.

27. Given Baylor's continued illegal Title IX practices, and retaliation against Plaintiff, Plaintiff could not continue working for an employer who actively discriminated against females and retaliated against Plaintiff for reporting discrimination. As a result, Plaintiff was constructively discharged on or about November 1, 2015.

28. With the help of End Rape on Campus, on April 27, 2016, Plaintiff filed an anonymous Title IX violation complaint against Baylor University with the Department of Education, Office of Civil Rights.

29. Baylor's violations of Title IX prompted the US. Education Department's Office of Civil Rights to pursue an investigation into whether Baylor violated Title IX regulations. That investigation is still ongoing.

30. Plaintiff resigned because Baylor thwarted implementation and enforcement of Title IX to wrongfully protect Baylor football players and the Baylor brand. Plaintiff could no

longer work for an institution retaliating against her for reporting Baylor's failure to comply with Title IX. Plaintiff hoped her resignation would promote change. Plaintiff wanted to get the word out that Baylor was not complying with Title IX. Plaintiff hoped that the government would ensure that Baylor complies with Title IX.

## LEGAL PRINCIPLES

31. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "is enforceable through an implied private right of action . . . for monetary damages as well as injunctive relief." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). "It is equally well established 'that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.'" *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015).

32. Numerous female students, on the basis of sex, were denied the benefits of, and subjected to discrimination under an education program or activity receiving Federal financial assistance.

33. The implied private right of action in Title IX includes protection from retaliation. *See Jackson v. Birmingham Board of Education*, 544 U.S. 167, 176-77 (2005).

## CAUSE OF ACTION:
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

34. A cause of action is pled against You for sexual discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et, al. (hereinafter "Title VII").

35. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

36. You constructively discharged Plaintiff from her position because of her gender, female, in violation of Title VII. You effectuated this discriminatory act, by creating a hostile, pervasive and intimidating environment. No reasonable person could have continued to work in that environment.

37. Plaintiff has met all procedural prerequisites of bringing this Title VII claim. Plaintiff filed Title VII charges relating to these violations on June 24, 2016 and again on December 8, 2016 and has received a right to sue letter relating to these charges. The right to sue letter is attached as Exhibit "A." Further, Plaintiff is within all applicable statutes of limitations for bringing this Action. As a proximate result of Your violation of Title VII, Plaintiff suffered damages within the jurisdictional limits of this Court.

## CAUSE OF ACTION:
## RETALIATION IN VIOLATION OF TITLE VII

38. A cause of action is pled against You for sexual discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et al. (hereinafter "Title VII").

39. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

40. You constructively discharged Plaintiff from her position because of her gender, female, in violation of the Title VII. You effectuated this discriminatory act, by creating a

hostile, pervasive and intimidating environment. No reasonable person could have continued to work in that environment.

41. Plaintiff has met all procedural prerequisites of bringing this Title VII claim. Plaintiff filed Title VII charges relating to these violations on June 24, 2016 and again on December 8, 2016 and has received a right to sue letter relating to these charges. The right to sue letter is attached as Exhibit "A." Further, Plaintiff is within all applicable statutes of limitations for bringing this Action. As a proximate result of Your violation of Title VII, Plaintiff suffered damages within the jurisdictional limits of this Court.

## CAUSE OF ACTION: NEGLIGENT INVESTIGATION

42. A cause of action is pled against You for negligence. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

43. You owed a duty to Plaintiff and female students at Baylor to exercise reasonably prudent and ordinary care in the care, treatment and protection of Your female students and female employees in the Title IX office. You were negligent by failing to properly investigate Plaintiff's complaint that Baylor was discriminating against women and not enforcing Title IX. You were negligent by failing to act as a reasonably prudent person would have under the same or similar circumstances.

44. As a proximate result of Your negligence, Plaintiff was damaged in excess of the minimum jurisdictional requirements of this Court.

## CAUSE OF ACTION:  GROSS NEGLIGENCE

45.     A cause of action is pled against You for gross negligence.  The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

46.     You owed a duty to Plaintiff to exercise reasonably prudent and ordinary care in the care, treatment and supervision of Your female students and employees in the Title IX office.  You violated this duty by negligently failing to act as a reasonably prudent person would have under the same or similar circumstances.  You were grossly negligent by:

   a. Failing to ensure that the Title IX office was protected from retaliation;
   b. Failing to act as a reasonably prudent person would have under the same or similar circumstances.

47.     Clear and convincing evidence proves that You proceeded with this course of conduct and/or inaction with complete knowledge of the serious danger to Baylor's female students and female employees working in Your Title IX office.   You acted with an entire want of care, indicating a conscious indifference to the rights or welfare of Plaintiff and others.  Accordingly, Your conduct constituted gross negligence, which proximately caused the damages suffered by Plaintiff.  Plaintiff is entitled to exemplary damages as a result of Your conduct.  As a proximate result of Your gross negligence, Plaintiff has been damaged in excess of the minimum jurisdictional requirements of this Court.

## DAMAGES

48.     After a period of unemployment, Plaintiff was able to find work.  Unfortunately, the job at which Plaintiff is now working pays Plaintiff less in total compensation and benefits than Plaintiff was earning at Baylor.    Plaintiff has suffered economic and other damages

including, but not limited to: (a) past lost wages, (b) future lost wages, (c) mental anguish and (d) attorney's fees.

49. Baylor's actions against Plaintiff made her physically ill. She became depressed, cried and was anxious. Plaintiff suffered headaches, nightmares and loss of sleep. She hyperventilated, had trouble sleeping, and stomach pain and indigestion. As a result of Baylor's retaliation against her, Plaintiff had to seek therapy and counseling while employed at Baylor. Plaintiff has and will continue to suffer physical pain, mental anguish, and severe emotional distress as a result of Baylor's retaliation against her.

50. At the time of its retaliation against Plaintiff, Baylor's conduct did, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which Baylor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, notably Plaintiff. Specifically, Baylor knew that its actions against Plaintiff presented an extreme risk of ruining the rest of her professional life. Accordingly, Baylor was grossly negligent in its dealings with Plaintiff, and such gross negligence was a direct, proximate, and producing cause of her damages.

1. Plaintiff sues to recover her actual damages in amounts to be found by the jury for:

   a. Lost wages in the past;

   b. Lost wages in the future;

   c. Injury to future earning capacity;

   d. Physical pain, mental anguish, and emotional distress in the past;

   e. Physical pain, mental anguish, and emotional distress, which in reasonable

          probability she will suffer in the future;

    f.   compensatory damages under Title VII;

    g.   exemplary damages in an amount to be set by the jury;

    h.   reasonable and necessary attorney's fees;

    i.   expert costs;

    j.   court costs; and

    k.   Pre-and post-judgment interest at the highest rates allowed by law.

## JURY DEMAND

51.    Demand is hereby made for this Court empanel a lawful jury to hear this case.

## RESERVATION OF RIGHTS

52.    The right to bring additional causes of action against and to amend this Action as necessary is hereby specifically reserved.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Prayer is hereby made that Defendant be cited to appear and to answer herein and that upon final hearing, the court enter judgment in favor of Plaintiff against Defendant, for the full amount of compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court and pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted

_____
**R. ROGGE DUNN**
State Bar No. 06249500
dunn@righttowork.com


**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833


**ATTORNEYS FOR PLAINTIFF**

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Gabrielle Lyons**<br>19123 Weber Rd, Apt 7<br>Mokena, IL 60448 | From: **El Paso Area Office**<br>300 E. Main Drive, Suite 500<br>El Paso, TX 79901 |

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2016-03277 | **Raul Ballesteros, Jr.,** Investigator | (915) 534-4526 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
Lucy V. Orta,
Area Office Director

MAY 3 1 2017
*(Date Mailed)*

Enclosures(s)

cc:    **Cheryl Gochis**
Vice President of Human Resources
BAYLOR UNIVERSITY
One Bear Place #97053
Waco, TX 76798

**Rogge Dunn**
CLOUSE DUNN LLP
1201 Elm Street, Suite 5200
Dallas, TX 75270

**EXHIBIT "A"**