IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GABRIELLE LYONS, | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 6:17-CV-232-RP |
| BAYLOR UNIVERSITY, | | |
| Defendant. | | |

**ORDER**

Before the Court are Defendant Baylor University's ("Baylor" or "the University") Motion to Dismiss, (Dkt. 4); Plaintiff Gabrielle Lyons's ("Lyons") Response and Alternative Motion for Leave to File a First Amended Complaint, (Dkt. 6); and Defendant's Reply, (Dkt. 10). Counsel for the plaintiff should be well aware of the pleading standards in federal court. The complaint falls below that standard. As a result of its minimal level of detail, this Court has spent considerable time reviewing the complaint and pending motion. Having done so, the Court enters the following order.

**I. BACKGROUND**

Lyons is a former investigator for the Title IX Office at Baylor University. (Compl., Dkt. 1). Lyons alleges that during her employment, Baylor intentionally discriminated against female students and female staff at the Title IX office by maintaining a workplace hostile to women, obstructing Lyons' efforts to conduct Title IX investigations, and creating a hostile work environment that resulted in her constructive discharge. (*Id.* ¶¶ 14–30). She alleges that Baylor constructively discharged her because she opposed Baylor's practices that violated 20 U.S.C. § 1681, et. seq. ("Title IX") and 42 U.S.C. § 2000e, et. seq. ("Title VII"). (*Id.* ¶ 11).

Lyons makes the following allegations in her Complaint. Lyons began working in the Title IX Office on or about April 1, 2015. (*Id.* ¶ 15). She alleges that "Baylor knew of the violent culture

1

on its campus, but took calculated steps to hide the allegations and protect its brand, to the detriment of its female students and the Title IX employees who were supposed to investigate and protect students from assault and discrimination." (*Id.* ¶ 17). Lyons alleges that "Baylor's deliberate opposition to following Title IX and intentional retaliation against Plaintiff and others . . . for trying to get Baylor to comply . . . were designed to create and did create a tense, pervasive[,] and hostile work environment" intended to cause Lyons to resign. (*Id.* ¶ 12). Specifically, she states that Baylor did not give the Title IX Office "sufficient resources to do its work" even after Patty Crawford, the Title IX coordinator and Lyons's supervisor, "notified Baylor repeatedly that the office needed more investigators and more resources." (*Id.* ¶ 19). Lyons also contends that Baylor "repeatedly failed to give [her] access to athletes" who allegedly committed or witnessed sexual harassment or assault. (*Id.* ¶ 19). Instead, "[w]hen football athletes were involved [in an investigation], the Title IX office had to go through [Athletic Director] Ian McCaw" or another athletic department "gatekeeper." (*Id.* ¶¶ 19–20). She alleges there was no such gatekeeping for investigations of female athletes or non-athlete students. (*Id.* ¶¶ 20–21). For example, Lyons alleges that Colin Shillinglaw, a former athletics department employee, "would not schedule meetings [Lyons] requested with the star football player" who was allegedly witness to an assault and then "gave [Lyons] a bad cell number" for him. (*Id.* ¶ 22). When Lyons "repeatedly requested a good phone number," Shillinglaw "claimed he did not have the number." (*Id.*).

Lyons asserts that a "sexist mind-set pervaded the culture at Baylor" and that it "negatively affected the female staff," including herself. (*Id.* ¶ 23). She alleges that she "spoke out, reported and complained about the discrimination," but when she "reported Baylor's illegal practices," she was "subjected to intimidation and retaliation." (*Id.* ¶ 25). As a result, Lyons contends she was "subjected to a hostile and retaliatory work environment" where the conditions were "so adverse and pervasive that a reasonable person would not continue to subject themselves to the situation." (*Id.* ¶ 26). She

alleges that "other employees" in the Title IX Office "felt compelled and forced to resign and did resign." (*Id.*).

"Given Baylor's continued illegal Title IX practices, and retaliation against [Lyons]," she alleges that she "could not continue working for an employer who actively discriminated against females" and "retaliated against [her] for reporting discrimination." (*Id.* ¶ 27). Lyons alleges she was "constructively discharged" on or about November 1, 2015. (*Id.*). She "resigned because Baylor thwarted implementation and enforcement to wrongfully protect Baylor football players and the Baylor brand." (*Id.* ¶ 30). She then filed an anonymous Title IX Complaint with the Office of Civil Rights at the Department of Education on April 27, 2016. (*Id.* ¶¶ 13, 28).

Based on these allegations, Plaintiff asserts claims of retaliation under Title IX, sex discrimination and retaliation under Title VII, and claims under Texas state law for negligent investigation and gross negligence.

Baylor filed a motion to dismiss Lyons's complaint for failure to state a claim. (Mot. Dismiss, Dkt. 4). Lyons filed a response, which requested leave to amend her complaint. (Resp., Dkt. 6, at 15). The Court will consider each motion in turn.

## II. MOTION TO DISMISS

### A. Legal Standard

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to

3

relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

*B. Discussion*

1. <u>Title IX Claims</u>

The Court first considers Lyons's Title IX claim, to the extent that she asserts one.[1] Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a). Specifically, it provides:

---

[1] Although Lyons does not identify a Title IX claim in her listed causes of action, (*see* Compl., Dkt. 1, ¶¶ 34–47), she states that "[t]his is a Title IX retaliation case" in her background discussion, (*id.* ¶ 11), and references Title IX in her statement of facts, (*id.* ¶ 25), and statement of legal principles, (*id.* ¶ 33 (citing *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 176-77 (2005)). As requested by Baylor, the Court therefore considers Lyons' Title IX claim "to the extent she asserts one." (Mot. Dismiss, Dkt. 4, at 7).

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

*Id.* Title IX is enforceable through an individual's private right of action and allows for the recovery of damages. *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76 (1992); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979). Title IX "encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to sexual harassment of a student . . . by another student." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (citing *Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 642 (1999)).

"[E]mployees of federally funded educational institutions who raise complaints, or participate in investigations, concerning compliance with the substantive provisions of title IX are protected from retaliation . . . and enjoy an implied private right of action for money damages to vindicate their rights."[2] *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 254 (5th Cir. 1997); *see also Jackson*, 544 U.S. at 173–74 ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action . . . Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment.").

"The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'" *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (quoting *Lowrey*, 117 F.3d at 252 n.18 (5th Cir. 1997)). Accordingly, to establish a prima facie case of retaliation under Title IX, "a plaintiff must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (citing *Willis v. Cleco Corp.*,

---

[2] Title IX "affords no private cause of action for employment discrimination." *Lowrey*, 117 F.3d at 254.

749 F.3d 314, 317 (5th Cir. 2014)). Resignation is an adverse employment action actionable under Title VII "only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). To prove a constructive discharge, a plaintiff "must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). In determining whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered "the relevancy of the following events":

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status . . .

*Id.* (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (cleaned up)).

      Lyons raises serious allegations, but she fails to support her Title IX claim with specific facts. Lyons's Complaint is largely composed of conclusory statements. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Regarding her alleged protected activity, Lyons only states that she "protested to Baylor's administration that Baylor's unlawful employment practices and Baylor's resistance to complying with its Title IX obligations," and that she "spoke out, reported and complained about the discrimination." (Compl., Dkt. 1, ¶ 25). Lyons does not allege when, how, or to whom she complained of sex discrimination. She does not identify any specific communication or interactions through which she raised her concerns. Regarding an adverse employment action, Lyons alleges that Baylor created a "hostile, pervasive, and intimidating environment" in which "no reasonable person would have continued to work," which resulted in Plaintiff's constructive discharge. (*Id.* at 9, ¶ 36). However, this is essentially a restatement of the standard for constructive dismissal. *See Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512

F.3d 157, 167 (5th Cir. 2007) (quoting *Brown*, 237 F.3d at 566) ("[A] plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign."). Lyons does not specify specific facts or interactions to illustrate any of the "events" the Fifth Circuit has found relevant to a constructive dismissal, such as assignment to menial work or specific instances of harassment or humiliation. *See Brown*, 237 F.3d at 566 (quoting *Barrow*, 10 F.3d at 297). Lyons's assertion that "Baylor engaged in a pattern and practice that was intentionally discriminatory towards a class, female students and the Title IX female staff, including Plaintiff," (Compl., Dkt. 1, ¶ 25), similarly lacks any specific facts. Lyons does specifically allege that Baylor denied the Title IX office important funding, (*id.* ¶ 19), and that Athletics Department staff repeatedly failed to provide contact information for certain football players involved in Title IX investigations, (*id.* ¶ 22). While these alleged facts may be relevant to showing that working conditions were intolerable enough to compel Lyons' resignation, *see Brown*, 237 F.3d at 566, Lyons fails to plead any other specific facts from which the Court could draw a reasonable inference that Baylor plausibly retaliated against her for raising concerns about the University's Title IX compliance.

Because Lyons alleges no specific facts to establish that she complained of sex discrimination, or that a causal connection existed between her complaints and the alleged constructive dismissal, the Court finds that Lyons's complaint fails to state a claim under Title IX. The Court will therefore dismiss that claim without prejudice.

2.  Title VII — Sex Discrimination Claims

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. In an action under Title VII, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule

12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). At this stage, although Lyons need not "make a showing of each prong of the prima facie test," *id.*, she must "allege facts sufficient to state all the elements of her claim." *Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014) (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. App'x. 363, 370 (5th Cir. 2008)). To make a prima facie case of discrimination under Title VII, a plaintiff must show "that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

Lyons has failed to allege facts sufficient to state the third or fourth element of a Title VII discrimination claim. As discussed above, Lyons has not alleged specific facts to support her claim for constructive dismissal. *See supra*, Section II(B)(1). Additionally, Lyons alleged no facts indicating that she was either replaced by someone outside of her protected class, or, in the case of disparate treatment, "that others similarly situated were treated more favorably." *See Outley*, 840 F.3d at 216. Although she alleges that a "sexist mind-set pervaded the culture at Baylor" and that it "negatively affected the female staff," including herself, (Compl., Dkt. 1, ¶ 23), Lyons alleges no specific facts from her employment to support this statement, other than describing the difficulty of conducting certain investigations. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). As pled, Lyons's conclusory allegations do not raise a right to relief above a speculative level. The Court therefore finds that Plaintiff's Complaint fails to state a sex discrimination claim under Title VII and will dismiss that claim without prejudice.

8

### 3. Title VII — Retaliation Claims

Lyons also alleges that Baylor constructively discharged her "because of her gender, female, in violation of Title VII." (Compl., Dkt. 1, ¶ 36). Because the Fifth Circuit applies the same test for retaliation under Title IX and Title VII, the Court will dismiss Lyon's Title VII retaliation claims for the same reasons it dismisses her Title IX claims above. *See supra*, Section II(B)(1); *Collins*, 609 F. App'x at 795 (quoting *Lowrey*, 117 F.3d at 252 n.18 (5th Cir. 1997)) ("The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'").

### 4. State Law Claims

Lyons also alleges claims under Texas law for negligent investigation and gross negligence. Before the Court considers the merits of her state law claims, the Court must consider whether federal law preempts them.

#### a. Federal Preemption of State Law Claims

Baylor contends that Title VII and Title XI preempt Lyons's negligence claims because, "[w]here the gravamen of a claim is discrimination or retaliation under Title VII, that statute forecloses and preempts common-law theories predicated on the same underlying facts." (Mot. Dismiss, Dkt. 4, at 7–9 (citing *Vaghtshenas v. IBM*, No. 4:16-CV-00179-ALM-CAN, 2017 U.S. Dist. LEXIS 30290, at *10-13 (E.D. Tex. Feb. 8, 2017); *Howe v. Yellowbook USA*, 840 F. Supp. 2d 970, 979-80 (N.D. Tex. 2011); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802–03 (Tex. 2010)).

Baylor's cited cases do not compel a finding that Title VII or Title IX preempt Lyons's negligence claims. In *Waffle House*, the Texas Supreme Court held that "[w]here the gravamen of a plaintiff's [sexual harassment] case is TCHRA-covered harassment, the [TCHRA] forecloses common-law theories predicated on the same underlying sexual-harassment facts." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 282 (Tex. 2017) (quoting *Waffle House*, 313 S.W.3d at 813); *see*

9

*also* Tex. Labor Code Ann. § 21.051 ("Texas Commission on Human Rights Act" or "TCHRA")). Baylor cites decisions from federal courts that have interpreted *Waffle House* to suggest that, like the TCHRA, Title VII presents a statutory scheme that preempts common law remedies. *See, e.g.*, *Howe*, 840 F. Supp. 2d at 979-980 (dismissing intentional infliction of emotional distress claims because they relied on the same facts as the plaintiff's Title VII claims); *Vaghtshenas*, 2017 U.S. Dist. LEXIS 30290, *12 ("[T]he TCHRA and Title VII preempt common law claims based on the same set of facts as those supporting the statutory claims (whether or not plaintiff asserts those statutory claims)."). But these cases directly contradict Supreme Court precedent. "It is well-established that Title VII does not preempt state common law remedies." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 214 n.2 (1991) (quoting *Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 364 (9th Cir. 1988); *see also* 42 U.S.C. § 2000e-7 ("Title VII does not exempt liability, duty, penalty, or punishment provided by state law.").

While the TCHRA may foreclose most common law negligence actions for workplace sexual harassment, Texas courts' construction of the TCHRA does not automatically extend to federal courts' construction of Title VII.[3]  Thus, the Court rejects Baylor's argument that Title VII and Title IX preempt Lyons's negligence claims.

### b. Legal Standard for State Law Claims

The Court next considers whether Lyons states a plausible claim for relief on either of her common law negligence theories. The Court's jurisdiction over Lyons' state law claims is supplemental to its federal question jurisdiction.[4] 28 U.S.C. § 1367(a). A federal court exercising

---

[3] Additionally, the Court is not aware of any Texas court holding that Title VII preempts a common law negligence claim for sexual harassment against an employer.

[4] Because the Court will dismiss Lyon's Title IX and Title VII claims with this Order, the Court has discretion whether to retain jurisdiction over any remaining state law claims. "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009); *see also* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the

supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits. *Sommers Drug Stores Co. Empl. Profit Sharing Tr.*, 883 F.2d 345, 353 (5th Cir. 1989) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 (1938)). As a result, this Court must apply Texas law to Plaintiff's state law claims. In resolving issues of Texas state law, federal courts look to decisions of the Texas Supreme Court. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016). If that court has not ruled on the issue, the federal court must make what is known as an "Erie guess"—that is, it must predict what the Texas Supreme Court would do if faced with the facts currently before the federal court. *Id.* Generally, absent a decision by Supreme Court of Texas, state intermediate courts' decisions are the strongest indicator of what a state supreme court would do. *Id.* at 780–81.

In Texas negligence law, liability "is premised on duty, a breach of which proximately causes injuries, and damages resulting from that breach." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). Whether a legal duty exists is therefore a threshold question; if there is no duty, there can be no liability. *Id.*

### c. Negligent Investigation

Lyons alleges that Baylor owed a duty to her and to female students at Baylor "to exercise reasonably prudent and ordinary care in the care, treatment and protection of [Baylor's] female students and female employees in the Title IX office." (Compl., Dkt. 1, ¶ 43). She alleges that Baylor was negligent by failing to properly investigate Lyons's complaint that Baylor was "discriminating against women and not enforcing Title IX," and by failing to act as a reasonably prudent person would have under the same or similar circumstances. (*Id.*)

---

district court has dismissed all claims over which it has original jurisdiction."); *Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction."). The Court will exercise that discretion in evaluating whether Lyons has stated a plausible claim for relief under her state law causes of action.

"No common-law tort of 'negligent investigation,' however, has ever been recognized by Texas courts." *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 666 (W.D. Tex. 2013) (citing *Tex. Farm Bureau Mut. Ins. Companies v. Sears*, 84 S.W.3d 604, 607 (Tex. 2002)). The Court therefore finds that Lyons has failed to state a negligent investigation claim. Because no such claim exists under Texas law, the Court will dismiss this claim with prejudice.

### d. Gross Negligence Claim

Finally, Lyons alleges that Baylor was grossly negligent by "failing to ensure that the Title IX office was protected by retaliation," and "failing to act as a reasonably prudent person would have under the same or similar circumstances." (Compl., Dkt. 1, at 11). Baylor contends that "Lyons fails to include any facts to support [these] allegations." (Mot. Dismiss, Dkt. 4, at 10). The Court agrees. Because Lyons has not pleaded any facts that would support her claim that retaliation occurred, or specifying how Baylor breached an alleged duty to Lyons, the Court finds Plaintiff has failed to state a gross negligence claim.

## III. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

In her response to Defendant's motion to dismiss, Plaintiff filed an alternative motion for leave to amend her complaint, (Dkt. 6, at 15). However, Plaintiff did not attach a proposed amended complaint as required under Local Rules. W.D. Tex. Loc. R. CV-7(b) ("When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave.").

Baylor argues that Plaintiff's motion for leave to file a first amended complaint should be denied because any amendment would be futile. (Reply, Dkt. 10, at 9). Baylor contends that her complaint "contains only conclusory allegations" and she had "given no indication . . . as to what she could possibly allege that would save her claims." (*Id.*).

*A. Legal Standard*

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation and internal quotation marks omitted). "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In assessing futility of amendment, the Court should consider whether the proposed amendment could survive a motion to dismiss. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) ("[W]e join our sister circuits that have interpreted [futility] to mean that the amended complaint would fail to state a claim upon which relief could be granted.").

*B. Discussion*

The Fifth Circuit has narrowly limited a district court's discretion to deny a motion for leave to amend a complaint. "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Mayeaux*, 376 F.3d at 425

(quoting *Dussouy*, 660 F.2d at 598). Based on the parties' submissions and the record before the Court, the Court finds that there is no evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies. The Court further finds that Baylor is not in danger of suffering undue prejudice at this stage of the case, because an amended complaint would merely require Baylor to re-brief certain issues in light of new facts and legal arguments.

However, in this instance, Lyons has not complied with the filing requirements to seek leave to file an amended complaint. Plaintiff did not attach a proposed amended complaint to her motion for leave. W.D. Tex. Loc. R. CV-7(b) ("When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave."). Because Plaintiff has not filed a proposed amended complaint, any analysis of futility is currently hypothetical. Accordingly, the Court will consider Plaintiff's motion for leave to amend the complaint if Plaintiff seeks leave in compliance with the Local Rules, by timely motion.

## IV. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Baylor's motion to dismiss for failure to state a claim, (Dkt. 4), is **GRANTED**.

Lyons's negligent investigation claim is **DISMISSED WITH PREJUDICE**. All other claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Amended Complaint, (Dkt. 6), is **DENIED WITHOUT PREJUDICE**. Lyons may seek leave to file an amended complaint in compliance with W.D. Tex. Loc. R. CV-7(b) on or before **February 27, 2019**.

**SIGNED** on January 16, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE